1

2

3

4

5

6

The Honorable Lauren King

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

TARA BENNETT, DAVID GARCIA, and
EDWARD POLHILL, individually and on
behalf of all others similarly situated.,

Plaintiffs,

v.

T-MOBILE USA, INC.,

Defendant.

No. 2:22-cv-01805-LK

**DEFENDANT'S MOTION TO
COMPEL ARBITRATION OR
DISCLOSURE OF IDENTIFYING
INFORMATION, AND STAY
CASE**

**Noted for Consideration:**
March 10, 2023

**Oral Argument Requested**

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................. 2

        A.      Mr. Polhill Agreed to Arbitrate His Claims on Multiple Occasions. ................... 2

                1.      Metro's T&Cs Provide that the Parties Will Arbitrate Disputes. ............ 3

                2.      Mr. Polhill Agreed to Arbitrate with Metro When He Opened His
                        Account in December 2013. ...................................................................... 4

                3.      Mr. Polhill Again Agreed to Arbitrate with Metro When He
                        Purchased New Devices in July 2018 and July 2019. .............................. 5

                4.      Mr. Polhill Continues to Manifest His Acceptance of the T&Cs. ............ 6

        B.      Plaintiffs Seek to Challenge the Enforceability of T-Mobile's Standard
                Contracts With Customers. ................................................................................... 6

III.    ARGUMENT .................................................................................................................. 7

        A.      Mr. Polhill's Claims are Subject to Arbitration. .................................................. 7

                1.      Mr. Polhill Agreed to Arbitrate His Claims. ........................................... 9

                2.      Mr. Polhill's Claims Fall Within the Scope of Arbitration. .................... 12

        B.      Mr. Polhill Delegated Any Arbitrability Dispute to the Arbitrator. ................... 13

                1.      Metro's Delegation Clause Is Clear and Unmistakable. ........................ 13

                2.      Metro's Delegation Clause Is Enforceable. ........................................... 15

                3.      In any Event, Metro's Arbitration Provision Is Enforceable. ................. 18

        C.      The Court Should Require Plaintiffs Bennett and Garcia to Arbitrate or
                Disclose Identifying Information. ........................................................................ 19

        D.      This Case Should Be Stayed. .............................................................................. 20

IV.     CONCLUSION .............................................................................................................. 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Mich. Bell Tel. Co.*,
 18 Mich. App. 632 (1969)..................................................................................17

*Alvarez v. T-Mobile USA, Inc.*,
 2011 U.S. Dist. LEXIS 146757 (E.D. Cal. Dec. 21, 2011) ....................................18

*Am. Express Co. v. Italian Colors Rest.*,
 570 U.S. 228 (2013)..................................................................................8, 18

*Amtower v. William C. Roney & Co.*,
 232 Mich. App. 226 (1998)..................................................................................10

*Artis v. Lyon Shipyard, Inc.*,
 2018 U.S. Dist. LEXIS 73704 (E.D. Va. Apr. 26, 2018)........................................16

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011)..................................................................................8, 18

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986)..................................................................................8, 12

*Barrie v. NFH Or.*,
 2020 U.S. Dist. LEXIS 253132 (D. Or. Nov. 4, 2020)............................................8

*BG Grp., PLC v. Republic of Argentina*,
 572 U.S. 25 (2014)..................................................................................16

*Blanton v. Domino's Pizza Franchising LLC*,
 962 F.3d 842 (6th Cir. 2020) ..................................................................................14

*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015) ..................................................................................14

*Britton v. Co-op Banking Grp.*,
 4 F.3d 742 (9th Cir. 1993) ..................................................................................12

*Carter v. Rent-A-Ctr., Inc.*,
 718 F. App'x 502 (9th Cir. 2017) ..................................................................................18

*Chippewa Valley Schs. v. Hill*,
 62 Mich. App. 116 (1975)..................................................................................10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000) .......................................................................... *passim*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ...................................................................8

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985) ..............................................................................8, 9

*Denson v. Keplr Vision, LLC*,
    2021 U.S. Dist. LEXIS 147181 (S.D. Cal. Aug. 5, 2021) .......................18

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015) ................................................................................8

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ........................................................................1, 9, 14

*Frye v. T-Mobile USA, Inc.*,
    2022 U.S. Dist. LEXIS 6891 (S.D. Fla. Jan. 13, 2022) ...........................9

*Gavrilovic v. T-Mobile USA, Inc.*,
    2022 U.S. Dist. LEXIS 67109 (E.D. Mich. Mar. 25, 2022) ...............17, 18

*Gittins v. MetroPCS Tex., LLC*,
    2017 Tex. App. LEXIS 11597 (2017) .......................................................9

*Goldberg v. Sweet*,
    488 U.S. 252 (1989), *abrogated on other grounds by Comptroller of Treasury
    of Maryland v. Wynne*, 575 U.S. 542 (2015) ..........................................7

*Harris v. T-Mobile, USA, Inc.*,
    No. 21-cv-03006, Dkt. #23 (E.D. Pa. Feb. 15, 2022) ..............................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .........................................................................14, 17

*Hergenreder v. Bickford Senior Living Grp., LLC*,
    656 F.3d 411 (6th Cir. 2011) ...................................................................10

*I.C. v. Zynga Inc.*,
    2021 U.S. Dist. LEXIS 2227 (N.D. Cal. Jan. 6, 2021) ......................19, 20

*In re StockX Customer Data Sec. Breach Litig.*,
    19 F.4th 873 (6th Cir. 2021) ....................................................................10

*In re Wyze Data Incident Litig.*,
    2020 U.S. Dist. LEXIS 196488 (W.D. Wash. Oct. 22, 2020) .................15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*J.A. v. Microsoft Corp.*,
  2021 U.S. Dist. LEXIS 84561, at *6 (W.D. Wash. Apr. 2, 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 83442 (W.D. Wash. Apr. 30, 2021) ............................................................................................15

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ................................................................................8

*Lebenbom v. UBS Fin. Servs.*,
  326 Mich. App. 200 (2018) ........................................................................17

*LeBoeuf v. NVIDIA Corp.*,
  833 F. App'x 465 (9th Cir. 2021) ...............................................................17

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
  2017 U.S. Dist. LEXIS 117212 (N.D. Cal. Feb. 14, 2017) .......................20

*Marshall v. Rogers*,
  2018 U.S. Dist. LEXIS 180190 (D. Nev. Oct. 19, 2018) ..........................20

*Mehler v. Terminix Int'l Co. L.P.*,
  205 F.3d 44 (2d Cir. 2000) ...........................................................................7

*Mendez v. T-Mobile USA, Inc.*,
  2022 U.S. Dist. LEXIS 8103 (S.D. Fla. Jan. 10, 2022) ..............................9

*MetroPCS Commc'ns, Inc. v. Porter*,
  273 So.3d 1025 (Fla. Ct. App. 2018) ...........................................................9

*Meyer v. T-Mobile USA, Inc.*,
  836 F. Supp. 2d 994 (N.D. Cal. 2011) ......................................................18

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ...................................................................16

*Mohammad v. T-Mobile USA, Inc.*,
  2018 U.S. Dist. LEXIS 202678 (E.D. Cal. Nov. 29, 2018)........................18

*Momot v. Mastro*,
  652 F.3d 982 (9th Cir. 2011) .....................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..................................................................................9, 12

*Murray v. Under Armour, Inc.*,
  2019 U.S. Dist. LEXIS 231532 (C.D. Cal. Feb. 11, 2019)........................16

*Naveja v. Primerica, Inc.*,
  2021 U.S. Dist. LEXIS 93191 (E.D. Cal. May 14, 2021)..........................15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*New Castle Cnty. v. U.S. Fire Ins. Co.*,
   728 F. Supp. 318 (D. Del. 1989) ...................................................................7

*New Prime Inc. v. Oliveira*,
   139 S. Ct. 532 (2019) .................................................................................13

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .....................................................................9

*Owings v. T-Mobile USA, Inc.*,
   978 F. Supp. 2d 1215 (M.D. Fla. 2013) ......................................................18

*Ozormoor v. T-Mobile USA, Inc.*,
   354 F. App'x 972 (6th Cir. 2009) ..........................................................17, 18

*Preston v. Ferrer*,
   552 U.S. 346 (2008) .................................................................................8, 9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ...................................................................................20

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ...............................................................................14, 16

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991) .......................................................................9

*Schmidt v. Samsung Elecs. Am., Inc.*,
   2017 U.S. Dist. LEXIS 80768 (W.D. Wash. May 25, 2017).........................15

*Schnall v. AT&T Wireless Servs., Inc.*,
   171 Wn.2d 260 (2011) ...............................................................................10

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ......................................................................19

*Smith v. T-Mobile USA, Inc.*,
   2018 U.S. Dist. LEXIS 68632 (D.S.C. Apr. 24, 2018) ..................................9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) .....................................................................................8

*Tali v. Meyers*,
   2020 U.S. Dist. LEXIS 16578 (D. Nev. Jan. 31, 2020) ...............................20

*Tillman v. Macy's, Inc.*,
   735 F.3d 453 (6th Cir. 2013) ..........................................................9, 10, 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Williams v. MetroPCS Wireless, Inc.*,
    2010 U.S. Dist. LEXIS 39225 (S.D. Fla. Apr. 21, 2010) ..........................................9

*Zawada v. Uber Techs., Inc.*,
    2016 U.S. Dist. LEXIS 178582 (E.D. Mich. Dec. 27, 2016), *aff'd*, 727 F.
    App'x 839 (6th Cir. 2018) .......................................................................................17

**Statutes**

9 U.S.C.
    § 1...........................................................................................................................7, 8
    § 2........................................................................................................................7, 8, 9
    § 3............................................................................................................................20
    § 4...................................................................................................................9, 19, 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## I.      INTRODUCTION

Plaintiffs Tara Bennett, David Garcia, and Edward Polhill (collectively, "Plaintiffs") allege Defendant T-Mobile USA, Inc. ("T-Mobile") failed to prevent third-party criminals from gaining access to their T-Mobile phone lines.  (ECF No. 1 ("Compl.") ¶¶ 70-73.)  There are many reasons why T-Mobile is not responsible for the criminal acts, and why Plaintiffs have no viable claim against T-Mobile.  But the merits are not before the Court—Plaintiffs' claims belong in arbitration.

In their Complaint, Plaintiffs do not dispute they entered into arbitration agreements with T-Mobile; instead, Plaintiffs contend T-Mobile's standard customer agreements to arbitrate are substantively and procedurally unconscionable and violate public policy; lack mutuality and impose unfair burden on Plaintiffs; contain an unduly onerous precondition to arbitration; and contain an unfair delegation provision.  The Court should compel arbitration over Plaintiffs' objections, which either fail as a matter of law or should be decided by the arbitrator.

*First*, T-Mobile's agreements with all its customers require arbitration of "any and all claims or disputes" related to T-Mobile's services.  Plaintiffs do not dispute entering into arbitration agreements with T-Mobile and they cannot dispute their claims fall within the broad scope of the agreement to arbitrate.

*Second*, Plaintiffs acknowledge that T-Mobile's arbitration agreements contain a delegation provision.  That provision requires an arbitrator, not this Court, to decide all threshold issues of arbitrability, including the validity and enforceability of the arbitration provision, and whether it violates public policy or imposes undue, onerous, or unfair burdens on Plaintiffs.

*Third*, Plaintiffs' narrow challenge to the delegation clause fails because it is based on the purported unconscionability of T-Mobile's dispute resolution process as opposed to the delegation clause itself.  The challenge also fails because a dispute resolution process requiring the parties to negotiate in good faith before submitting disputes to arbitration is not unconscionable.

MOTION TO COMPEL ARBITRATION
(2:22-cv-01805-LK) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

While all three Plaintiffs assert identical claims and allegations, differing only in their state of residence and amount of damages claimed, T-Mobile has only been able to confirm Mr. Polhill's identity and controlling arbitration agreements with T-Mobile's "Metro" brand.[1] Nevertheless, because Ms. Bennett and Mr. Garcia also do not dispute their agreements to arbitrate with T-Mobile, the Court should compel arbitration of their claims as well or, at minimum, require Ms. Bennett and Mr. Garcia to provide information to confirm their identities as T-Mobile customers so T-Mobile can locate their specific agreements and the Court can decide any disputed issue without delay.[2]

In sum, the Court should grant T-Mobile's Motion to Compel arbitration of Plaintiffs' claims and stay this action.

## II.     BACKGROUND

### A.     Mr. Polhill Agreed to Arbitrate His Claims on Multiple Occasions.

T-Mobile provides wireless telecommunications services through several brands. Its Metro brand offers prepaid wireless phone plans to more than 18 million customers at industry-leading rates. (Muzio Decl. ¶ 3.) Metro's records show Mr. Polhill is a Metro customer with a Metro wireless services account. (*Id.* ¶ 6.) Since his initial activation in 2013, Mr. Polhill has continued to use and pay for his Metro account. (*Id.* ¶¶ 9, 31.) During that time, Mr. Polhill has repeatedly agreed to arbitrate any claims he may have against Metro, including any disputes about the validity or enforceability of the parties' arbitration agreement.

---

[1] In 2013, MetroPCS Communications, Inc., merged with T-Mobile USA, Inc. (Decl. of Christopher Muzio ("Muzio Decl.") ¶ 3.) T-Mobile maintained the "MetroPCS" brand for prepaid wireless services until 2019, when T-Mobile changed that brand name to "Metro by T-Mobile." (*Id.*) This motion refers to T-Mobile USA, Inc., doing business as Metro by T-Mobile, as "Metro."

[2] T-Mobile has been unable to locate Ms. Bennett and Mr. Garcia's accounts based on the limited information provided in the Complaint. (*See* Muzio Decl. ¶ 34.) Counsel for T-Mobile asked Plaintiffs' counsel to provide the account number and telephone number for Ms. Bennett and Mr. Garcia so that T-Mobile can verify they are or were T-Mobile customers (through the Metro brand or a different brand). Plaintiffs have refused to provide the information requested. (*See* Decl. of James Moon ("Moon Decl.") ¶ 3.)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1.     **Metro's T&Cs Provide that the Parties Will Arbitrate Disputes.**

Metro posts the current version of its Terms & Conditions ("T&Cs") on its website. (Muzio Decl. ¶ 30.)  The Metro T&Cs begin with a clear notice of the parties' duty to arbitrate in bold lettering:

> <u>IMPORTANT</u>: **READ THIS AGREEMENT CAREFULLY. IT REQUIRES THE USE OF INDIVIDUAL ARBITRATION RATHER THAN JURY TRIALS OR CLASS ACTIONS TO RESOLVE DISPUTES.**

(*Id.*, Ex. F ("T&Cs").)[3]  Consistent with this notice, the T&Cs prominently disclose and explain the arbitration obligation as follows:

> **\* Dispute Resolution and Arbitration. We each agree that, except as provided below, any and all claims or Disputes between you and us, in any way related to or concerning the Agreement, our Privacy Policy, our Services, devices or products, will be resolved by binding arbitration.** … "Dispute" shall be given the broadest possible meaning and shall include any dispute, claim, or controversy arising from or relating to this Agreement or Services and/or Products provided under this Agreement, including but not limited to: (1) all claims for relief and all theories of liability, whether based in contract, tort, statute, regulation, ordinance, fraud, or misrepresentation; (2) all disputes regarding the validity, enforceability or scope of this arbitration agreement (with the exception of its class action waiver); (3) all disputes that arose before this Agreement; (4) all disputes that arise after the termination of this Agreement; and (5) all disputes that are the subject of a putative class action in which no class has been certified.  References in this provision to "us" include our parents, subsidiaries, affiliates, predecessors, successors, and assigns and our and their directors, officers, employees and agents.  References in this provision to "you" include all beneficiaries of this Agreement and all users of the Services provided under this Agreement. Notwithstanding the foregoing, either party may bring an individual action in small claims court or bring Disputes to the attention of federal, state, or local agencies, including, but not limited to, the Federal Communications Commission.

(T&Cs ¶ 2.)

---

[3] While Metro periodically revises the T&Cs, the relevant provisions have not changed in any way material to this dispute.  (Muzio Decl. ¶ 21; *see generally id.* Exs. A-I).  For convenience, Metro cites the October 8, 2018 T&Cs for the relevant provisions.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The T&Cs provide the arbitration agreement is governed by the Federal Arbitration Act ("FAA").  (T&Cs ¶ 2.)  The T&Cs provide the American Arbitration Association ("AAA") will administer the arbitration, subject to its rules.  (*Id*.)  The T&Cs also provide that "[a]n arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief and attorneys' fees."  (*Id*.)

The T&Cs allow customers to opt out of the arbitration agreement:

> If you do not wish to be bound by this arbitration agreement, you must notify us of your desire to do so within 30 days of initiating Service, or, if you have never had the opportunity to opt out of arbitration, within 30 days of the date of the change notice giving you the opportunity.

(*Id*.; *see also, e.g.*, Muzio Decl., Ex. A at 2 (May 2013 T&Cs).)

The T&Cs provide an informal pre-arbitration resolution process that requires both parties to attempt to resolve disputes in good faith before initiating arbitration:

> For all disputes, whether pursued in court or arbitration, you must first give us an opportunity to resolve your claim by sending a written description of your claim ….  We each agree to negotiate your claim in good faith.  If we are unable to resolve the claim within 60 days after we receive your claim description, you may pursue your claim in arbitration

(T&Cs ¶ 2.)  The T&Cs also include, in prominent text, a class action waiver, which does not apply to customers who opt out of arbitration.  (*Id.*)

### 2.    Mr. Polhill Agreed to Arbitrate with Metro When He Opened His Account in December 2013.

Mr. Polhill became a "Metro by T-Mobile" customer in December 2013.  (Muzio Decl. ¶ 6.)  At that time, Mr. Polhill—like all new Metro customers—received an information sheet explaining Metro's return and upgrade policies, highlighting important aspects of Metro's T&Cs, and providing the full web address for the full T&Cs (the "Metro Information Sheet").  (*Id.* ¶ 10, Ex. J.)  The Metro Information Sheet states at the top that the customer will agree and be bound to the current T&Cs "when you activate, use, change or pay for your MetroPCS service," and it provides a link to the T&Cs on Metro's website.  (*Id*., Ex. J at 2.)  The Metro Information Sheet

MOTION TO COMPEL ARBITRATION
(2:22-cv-01805-LK) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

includes a bullet list that summarizes key terms from the T&Cs, including a bullet that states in bold font:  "**Your disputes with MetroPCS will be decided by an arbitrator**."  (*Id.*)  The bullet list also includes bullets that state:  "[y]ou waive your right to a jury trial in disputes with MetroPCS" and "[y]ou waive your right to institute or participate in class action litigation against MetroPCS."  (*Id.*)  Both the Metro Information Sheet and the T&Cs explain the customer agrees to the T&Cs by "activating Service," "using your Service after your Service is activated or after you make a change or addition to your Service," and "paying for the Service."  (*Id.*; T&Cs at Preamble.)  The T&Cs also explain, "IF YOU ARE A NEW CUSTOMER AND YOU DO NOT AGREE TO THIS AGREEMENT, DO NOT DO ANY OF THESE THINGS."  (T&Cs ¶ 1.)

> **3.**      **Mr. Polhill Again Agreed to Arbitrate with Metro When He Purchased New Devices in July 2018 and July 2019.**

In connection with certain device changes, Metro sends customers a short message service ("SMS") message, or "text message", notifying them again of the T&Cs and directing them to the website containing the T&Cs.  (Muzio Decl. ¶ 27.)  Metro sent Mr. Polhill a link to the then-current T&Cs via text message to his phone number, in both Spanish and English, on July 25, 2018, and July 5, 2019, when he purchased new devices.  (*Id.* ¶ 28.)  Metro sent the same message to other lines on Mr. Polhill's account in April 2019, June 2019, and August 2020.  (*Id.*)

In addition, each Metro device, such as a new phone, comes in a box with a sticker (the "Metro Box Sticker") on the outside that must be removed before the box can be opened.  (*Id.* ¶ 24.)  The Metro Box Sticker references Metro's T&Cs and the applicability of the arbitration provision.  (*Id.* ¶¶ 24-25 ("By purchasing or opening this package, activating, using, or paying for Metro by T-Mobile service, you agree to the Metro by T-Mobile Terms and Conditions ('T&Cs') which provide for arbitration of disputes ….").)  It also directs customers to the full T&Cs on Metro's website and instructions on how to opt out of the arbitration agreement.  (*Id.*)  Metro's records show Mr. Polhill received Metro devices that would have been sealed by the

MOTION TO COMPEL ARBITRATION
(2:22-cv-01805-LK) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Metro Box Sticker on July 25, 2018, April 6, 2019, June 19, 2019, July 5, 2019 and August 14, 2020.  (*Id.* ¶ 26.)

    **4.**    **Mr. Polhill Continues to Manifest His Acceptance of the T&Cs.**

Every month, Mr. Polhill received a text message that Metro's system automatically sends Metro customers as a reminder of their monthly payment, eight days prior to the due date. (Muzio Decl. ¶ 29.)  The message reminds the customer that Metro's T&Cs, and specifically the arbitration agreement, apply.  The message also includes a link that directs the customer to the full T&Cs.  (*Id.*)  The message reads: "[Account #]: Please pay $[amount due] by [due date] to avoid service interruption.  [Metro] Terms & Conditions including arbitration apply.  See mbytmo.com/terms."  (*Id.*)  The website address sends customers directly to Metro's current T&Cs.  (*Id.*)  Metro's records show Mr. Polhill made at least 125 payments between December 2013 and December 2022, when he initiated this action.  (*Id.* ¶ 31.)  Each time he paid for his Metro service, Mr. Polhill reaffirmed his agreement to the T&Cs.  (*See, e.g.*, T&Cs at Preamble ("You accept our Terms and Conditions by… paying for the Service[.]").)

Although the T&Cs gave Mr. Polhill the opportunity to opt out of arbitration, he did not do so.  (Muzio Decl. ¶ 32.)

**B.**    **Plaintiffs Seek to Challenge the Enforceability of T-Mobile's Standard Contracts With Customers.**

On December 21, 2022, Mr. Polhill, Ms. Bennett, and Mr. Garcia filed a putative class action complaint against T-Mobile.  (Compl.)  Plaintiffs allege that T-Mobile failed to prevent unauthorized individuals from accessing Plaintiffs' accounts and taking control of their T-Mobile lines of service.  (*Id.* ¶¶ 1-10.)  Plaintiffs further allege claims for declaratory judgment, negligence, breach of contract and the implied covenant of good faith and fair dealing, and violations of the Federal Communications Act ("FCA") and Computer Fraud and Abuse Act ("CFAA").  (*Id.* ¶¶ 98-151.)

Other than their state of residence and amount of damages claimed, Ms. Bennett and Mr. Garcia's allegations with respect to their agreements with T-Mobile are factually

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

indistinguishable from Mr. Polhill's allegations.  All three Plaintiffs allege T-Mobile provided them wireless services, including telephone numbers, for their mobile devices.  (*Id*. ¶¶ 62, 66, 70.)  Plaintiffs acknowledge each of their relationships with T-Mobile is governed by "a written contract, the Terms and Conditions."  (*Id*. ¶ 136.)  Indeed, Plaintiffs claim T-Mobile breached the Terms and Conditions.  (*See id*. ¶¶ 136-141.)  Plaintiffs also acknowledge they entered into arbitration agreements with T-Mobile, as they repeatedly admit the written T&Cs include an arbitration clause.  (*See, e.g.*, *id*. ¶ 91 (referring to "the arbitration clause" in the Terms and Conditions); *id*. ¶¶ 89, 96.)  Plaintiffs instead allege the arbitration clause in the T&Cs is unconscionable and therefore unenforceable because it "lacks mutuality and imposes an unfair burden on Plaintiffs," "[t]he Terms and Conditions includes pretextual and unduly onerous preconditions to arbitration," and "[T-Mobile's]'s complaint process is ineffective, unavailing, and one-sided; it requires users to jump through antecedent hoops … before initiating arbitration."  (*Id*. ¶¶ 90-92, 94.)  Plaintiffs further allege that any delegation clause "that 'decides who decides' disputes … imposes an onerous, unfair, and unusual burden on users because the delegation clause itself is subject to the multi-step, onerous dispute resolution process in the Terms of Service."  (*Id*. ¶ 93.)  Plaintiffs seek a declaration from this Court that the arbitration clause, any delegation clause and dispute resolution notice, class action waiver, and jury trial waiver are unconscionable and unenforceable.  (*Id*. ¶ 97.)

## III.   ARGUMENT

### A.   Mr. Polhill's Claims are Subject to Arbitration.

The FAA applies to the Metro T&Cs because a contract for telecommunication services affects interstate commerce.  *See* 9 U.S.C. §§ 1-2; *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 47 (2d Cir. 2000); *Goldberg v. Sweet*, 488 U.S. 252, 254-55 (1989), *abrogated on other grounds by Comptroller of Treasury of Maryland v. Wynne*, 575 U.S. 542, 555 (2015) (telecommunications industry constitutes interstate commerce).  Moreover, the FAA applies because the contract between Metro and Mr. Polhill is a contract between citizens of different states, rendering the FAA applicable.  (Compl. ¶¶ 15-16.)  *See, e.g.*, *New Castle Cnty. v. U.S.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  *Fire Ins. Co.*, 728 F. Supp. 318, 320 (D. Del. 1989) (citing 9 U.S.C. § 1); *Barrie v. NFH Or.*,

2  2020 U.S. Dist. LEXIS 253132, at *9 (D. Or. Nov. 4, 2020).  The T&Cs also explicitly state that

3  the FAA governs the agreement.  (T&Cs ¶¶ 2, 26.)  *See Preston v. Ferrer*, 552 U.S. 346, 353

4  (2008) (applying FAA's procedural rules based on choice-of-law clause).

5          "The overarching purpose of the FAA ... is to ensure the enforcement of arbitration

6  agreements according to their terms so as to facilitate streamlined proceedings."  *AT&T Mobility*

7  *LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct.

8  1407, 1416 (2019) ("benefits of private dispute resolution [include] lower costs, greater

9  efficiency and speed, and the ability to choose expert adjudicators to resolve specialized

10  disputes") (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)).

11  Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable,

12  save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.

13  § 2.

14          The FAA is also mandatory and does not allow courts to delve into policy considerations

15  regarding arbitration.  It "leaves no place for the exercise of discretion by a district court, but

16  instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as

17  to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470

18  U.S. 213, 218 (1985).  For instance, plaintiffs may not avoid an arbitration agreement simply

19  because it contains a class action waiver, *Concepcion*, 563 U.S. at 352; *see also DIRECTV, Inc.*

20  *v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("judges of every State must follow" *Concepcion*),

21  especially as plaintiffs generally have no "entitlement to class proceedings for the vindication of

22  statutory rights," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

23          To further the FAA's objectives, the Supreme Court has emphasized that courts should

24  interpret arbitration clauses liberally in favor of arbitration.  "It is well established 'that where

25  the contract contains an arbitration clause, there is a presumption of arbitrability.'"  *Comedy*

26  *Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc.*

27  *v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).  "[A]ny doubts concerning the scope

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The Supreme Court has instructed lower courts to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357 (citation omitted). Even "the most minimal indication of the parties' intent to arbitrate must be given full effect." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).

In considering a motion to compel arbitration, "[t]he court's role under the [FAA] is … limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When both elements exist, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration" on the issues they have agreed to arbitrate. *Id.* (quoting *Dean Witter*, 470 U.S. at 218) (citing 9 U.S.C. §§ 2, 4). As explained below, both conditions are satisfied and the Court should direct Mr. Polhill to arbitrate his claims.[4]

### 1.     Mr. Polhill Agreed to Arbitrate His Claims.

Courts apply ordinary contract formation principles under applicable state law to determine whether parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013) (citation omitted). ("Because arbitration agreements are fundamentally contracts, [courts] review the enforceability of an arbitration agreement according to the applicable state law of contract formation.").

Here, Michigan law governs as to Mr. Polhill because Mr. Polhill's address as reflected on Metro's records is in Michigan. (Muzio Decl. ¶ 33; *see* T&Cs ¶ 26 ("This Agreement is

---

[4] Courts around the country routinely enforce Metro's arbitration agreement over objections similar to those Plaintiffs raise here. *See, e.g.*, *Frye v. T-Mobile USA, Inc.*, 2022 U.S. Dist. LEXIS 6891, at *2 (S.D. Fla. Jan. 13, 2022); *Mendez v. T-Mobile USA, Inc.*, 2022 U.S. Dist. LEXIS 8103, at *12 (S.D. Fla. Jan. 10, 2022); *Harris v. T-Mobile, USA, Inc.*, No. 21-cv-03006, Dkt. #23 at 4 (E.D. Pa. Feb. 15, 2022); *Williams v. MetroPCS Wireless, Inc.*, 2010 U.S. Dist. LEXIS 39225 (S.D. Fla. Apr. 21, 2010); *MetroPCS Commc'ns, Inc. v. Porter*, 273 So.3d 1025 (Fla. Ct. App. 2018); *Gittins v. MetroPCS Tex., LLC*, 2017 Tex. App. LEXIS 11597 (2017); *Smith v. T-Mobile USA, Inc.*, 2018 U.S. Dist. LEXIS 68632 (D.S.C. Apr. 24, 2018).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your service address in our records is located, without regard to the conflicts of laws rules of that state.").)  Washington courts enforce choice-of-law provisions.  *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 266 (2011).

"An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it."  *Tillman*, 735 F.3d at 459 (citation omitted) (applying Michigan law).  "The question of mutual assent 'is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'"  *Id.*  (quoting *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011).  "Michigan law permits parties to accept offers through conduct."  *Id.* at 460.  Moreover, Michigan courts enforce contractual arbitration provisions, which "are to be liberally construed with any doubts to be resolved in favor of arbitration."  *Amtower v. William C. Roney & Co.*, 232 Mich. App. 226, 233 n.5 (1998) (citing *Chippewa Valley Schs. v. Hill*, 62 Mich. App. 116, 120 (1975)).

Applying these principles, the Sixth Circuit found an agreement to arbitrate under Michigan law where a company sent an email to its registered users informing them it had updated its terms of service and including a hyperlink where the users could "read the full Terms of Service."  *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881-82 (6th Cir. 2021).  The terms provided, *inter alia*, "YOUR CONTINUED USE OF THE SITE AND/OR SERVICES AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES."  *Id.*  The court explained it was the users' "duty to 'read' the contract and obtain an explanation if they did not understand it."  *Id.*  The court concluded the users' conduct "mirrors that called for in the offer" because they continued to log into their accounts and use the company's services, establishing mutual assent to the updated arbitration terms.  *Id.* at 882; *see also Tillman*, 735 F.3d at 459-60 (finding an agreement to arbitrate when a company provided an offer to enter into a binding arbitration agreement by providing notice of the terms to the

MOTION TO COMPEL ARBITRATION
(2:22-cv-01805-LK) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   employee, and the employee's conduct showed mutual assent because his "performance

2   mirror[ed] that called for in the offer").

3         Here, Metro extended an offer to enter into an arbitration agreement when it provided

4   Mr. Polhill its Metro Information Sheet explaining that Mr. Polhill would agree to be bound by

5   the terms of the T&Cs "when you activate, use, change or pay for your MetroPCS service."

6   (Muzio Decl., Ex. J at 2.)  The Metro Information Sheet provided a link to the full T&Cs.  (*Id*.)

7   It also emphasized that the T&Cs included an agreement to arbitrate by stating, in a bullet point

8   using bold font, "**Your disputes with MetroPCS will be decided by an arbitrator.**"  (*Id*.)

9   Mr. Polhill's performance "mirror[ed] that called for in the offer," and he objectively manifested

10   his assent to the T&Cs, including the arbitration agreement, when he activated, used, and paid

11   for his Metro service.  (*Id.* ¶ 31.)  *Tillman*, 735 F.3d at 460.  And although he was provided an

12   opportunity to opt out of the arbitration agreement, Mr. Polhill chose not to do so.  (Muzio Decl.

13   ¶ 32.)  Under Michigan law, Metro and Mr. Polhill entered into a binding agreement to arbitrate.

14         Mr. Polhill continued to manifest his assent to arbitration by using his device.  As stated

15   in the T&Cs, Mr. Polhill "accept[ed] [Metro's] Terms and Conditions by… using your Service

16   after your Service is activated or after you make a change or addition to your Service."  (T&Cs at

17   Preamble.)  Metro's records show Mr. Polhill received another link to the then-current T&Cs at

18   his phone number via text message, in both Spanish and English, in July 2018 and July 2019

19   when he received Metro devices that came with a Metro Box Sticker.  (Muzio Decl. ¶ 28.)  That

20   sticker reiterated that "[b]y purchasing or opening this package, activating, using, or paying for

21   Metro by T-Mobile service, you agree to the Metro by T-Mobile Terms and Conditions ('T&Cs')

22   *which provide for arbitration of disputes*…."  (*Id*. ¶¶ 24-26 (emphasis added).)  And Metro's

23   records show Mr. Polhill made at least 125 payments between December 2013 and December

24   2022, each time affirming his acceptance of the T&Cs.  (*Id.* ¶ 31; T&Cs ¶ 1.)  His payments were

25   preceded every month by an automatic text message from Metro that reminded him not only of

26   his payment amount and due date, but that "Metro by T-Mobile Terms & Conditions *including*

27

MOTION TO COMPEL ARBITRATION
(2:22-cv-01805-LK) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

***arbitration*** apply," with a link to the then-current T&Cs on Metro's website.  (Muzio Decl. ¶ 29 (emphasis added).)  Mr. Polhill assented to the arbitration agreement provided in the T&Cs.

### 2.    Mr. Polhill's Claims Fall Within the Scope of Arbitration.

Mr. Polhill's claims fall within the parties' arbitration agreement.  The FAA reflects a "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Arbitration should be denied only when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs.*, 475 U.S. at 650.  "In the absence of any express provision excluding a particular grievance from arbitration … only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *Id.* at 654.

The Ninth Circuit recognizes arbitration clauses encompassing "[a]ny dispute, controversy[,] or claim" reach "broad and far" in scope, *Chiron Corp.*, 207 F.3d at 1131, and parties "routinely use[]" such clauses "to secure the broadest possible arbitration coverage," *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993).  Mr. Polhill consented to arbitrate the "broadest possible" range of disputes with Metro.  The T&Cs provide:

> **\* Dispute Resolution and Arbitration. We each agree that, except as provided below, any and all claims or Disputes between you and us, in any way related to or concerning the Agreement, our Privacy Policy, our Services, devices or products, will be resolved by binding arbitration.** …  "Dispute" shall be given the broadest possible meaning and shall include any dispute, claim, or controversy arising from or relating to this Agreement or Services and/or Products provided under this Agreement, including but not limited to: (1) all claims for relief and all theories of liability, whether based in contract, tort, statute, regulation, ordinance, fraud, or misrepresentation; (2) all disputes regarding the validity, enforceability or scope of this arbitration agreement (with the exception of its class action waiver); (3) all disputes that arose before this Agreement; (4) all disputes that arise after the termination of this Agreement; and (5) all disputes that are the subject of a putative class action in which no class has been certified.

(T&Cs ¶ 2.)

Mr. Polhill alleges violations under the FCA and CFAA, negligence, negligent hiring, and breach of contract and the implied covenant of good faith and fair dealing.  (Compl. ¶¶ 98-151.)  His substantive claims revolve around his allegation that a Metro employee "gave an illegal actor access to Mr. Polhill's telephone number" and "swapped Mr. Polhill's mobile phone service from his device … to the illegal actor's mobile device."  (*Id.* ¶ 72.)  The parties' arbitration agreement covers Mr. Polhill's claims because it reaches "any and all claims… in any way related to or concerning the Agreement, our Privacy Policy, our Services, devices or products" that Metro agreed to provide Mr. Polhill.  (T&Cs ¶ 2.)  For avoidance of doubt, the arbitration agreement also expressly reaches "all claims for relief and all theories of liability, whether based in contract, tort, statute, [or] regulation," which covers Mr. Polhill's claims.

Because the parties' arbitration agreement "encompasses the dispute at issue," the second FAA element is met.  *Chiron Corp.*, 207 F.3d at 1130.

**B.      Mr. Polhill Delegated Any Arbitrability Dispute to the Arbitrator.**

Because a valid agreement to arbitrate binds Mr. Polhill and encompasses the present dispute, the Court should grant this Motion.  *See Chiron Corp.*, 207 F.3d at 1131-32.  Moreover, in addition to his agreement to arbitrate his claims with Metro, Mr. Polhill also agreed that gateway issues such as challenges to the scope or enforceability of the arbitration provision would be decided by an arbitrator, not this Court.

Mr. Polhill acknowledges the T&Cs contain a delegation clause; yet, in an effort to avoid the delegation clause, Mr. Polhill seeks "a declaration that the arbitration clause, including any delegation clause and dispute resolution notice, class action waiver, and jury trial waiver… are unconscionable and unenforceable as to Plaintiffs."  (Compl. ¶ 97.)  To the contrary, the delegation clause is valid and enforceable, and this Court should compel arbitration to allow an arbitrator to decide any challenge to arbitrability that Mr. Polhill may raise.

**1.      Metro's Delegation Clause Is Clear and Unmistakable.**

"A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration."  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532,

MOTION TO COMPEL ARBITRATION
(2:22-cv-01805-LK) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

538 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Ctr.*, 561 U.S. at 68-69).  "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 530.  "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  *Id.*  Federal law governs the question of whether the parties agreed to delegate arbitrability to the arbitrator.  *See Chiron Corp.*, 207 F.3d at 1131.  The T&Cs clearly and unmistakably delegate arbitrability to the arbitrator through two clauses.

*First*, the T&Cs incorporate the AAA's "rules for consumer disputes in effect when the arbitration is initiated."  (T&Cs ¶ 2; *see also id.* ("For claims less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes will apply."); Muzio Decl., Ex. I ("The arbitration of all disputes will be administered by the AAA under its Consumer Arbitration Rules in effect at the time the arbitration is commenced....").)  The AAA's current Consumer Arbitration Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  (Moon Decl., Ex. A, Rule R-14(a).)  "[V]irtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal quotations omitted); *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845-46 (6th Cir. 2020) (joining eleven other federal circuit courts in agreeing that "incorporation of the AAA Rules... provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability'").  Incorporation of the AAA rules delegates to the arbitrator the responsibility to decide arbitrability issues, such as Mr. Polhill's unconscionability challenge, as

other judges in this district have repeatedly held. *See, e.g.*, *J.A. v. Microsoft Corp.*, 2021 U.S. Dist. LEXIS 84561, at *6 (W.D. Wash. Apr. 2, 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 83442 (W.D. Wash. Apr. 30, 2021); *In re Wyze Data Incident Litig.*, 2020 U.S. Dist. LEXIS 196488, at *10 (W.D. Wash. Oct. 22, 2020); *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 U.S. Dist. LEXIS 80768, at *17 (W.D. Wash. May 25, 2017).

*Second*, the scope of the T&Cs' arbitration agreement clearly and unmistakably delegates arbitrability to the arbitrator.  The T&Cs state that "any and all claims or Disputes between you and us, in any way related to or concerning the Agreement, our Privacy Policy, our Services, devices or products, will be resolved by binding arbitration."  (Muzio Decl., Ex. F ¶ 2; *see also* T&Cs at 2 ("all disputes regarding the validity, enforceability or scope of this arbitration agreement (with the exception of its class action waiver)").)  Courts have held similarly broad language demonstrates "clear and unmistakable evidence" of an agreement to arbitrate arbitrability.  *See, e.g.*, *Naveja v. Primerica, Inc.*, 2021 U.S. Dist. LEXIS 93191, at *16-17 (E.D. Cal. May 14, 2021) (concluding parties clearly and unmistakably delegated arbitrability where arbitration clause included "any type of dispute in any way related to your relationship with a Primerica Company that under law may be submitted by agreement to binding arbitration" and parties agreed to conduct arbitration in accordance with AAA Rules); *see also Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011).  Accordingly, a "valid agreement to arbitrate exists" and "encompasses" the arbitrability dispute, and Mr. Polhill must bring this claim to the arbitrator. *Chiron Corp.*, 207 F.3d at 1130.

### 2. Metro's Delegation Clause Is Enforceable.

The parties' agreement to have the arbitrator decide gateway issues is itself enforceable and not unconscionable, despite Mr. Polhill's allegation that it "imposes an onerous, unfair, and unusual burden" because it is subject to "the multi-step, onerous dispute resolution process in the Terms of Service."  (Compl. ¶ 93.)

Mr. Polhill's allegations attack the delegation clause indirectly, claiming the dispute resolution requirement renders delegation unconscionable—not that delegation is itself

MOTION TO COMPEL ARBITRATION
(2:22-cv-01805-LK) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

unconscionable.  When assessing "an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'"  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016).  When a party claims a delegation clause is unconscionable based on common procedures that apply to the contract as a whole, the inquiry is whether "these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable."  *Rent-A-Ctr.*, 561 U.S. at 74.  In other words, as the Supreme Court explained, Mr. Polhill must "argue that [existence of the dispute resolution process] causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable."  *Id*.

Mr. Polhill's unconscionability allegation makes no such argument.  The T&Cs set forth a procedure for informal resolution of disputes before a party may initiate arbitration, requiring both parties to negotiate in good faith to resolve a dispute before submitting it to arbitration.  (T&Cs ¶ 2.)  But this informal resolution procedure is distinct from and has no bearing on the conscionability of the parties' agreement to delegate resolution of arbitrability to the arbitrator.  *See BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 35-36 (2014) (explaining requirement to engage in pre-arbitration resolution procedure "determine[d] *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all").

Courts reject unconscionability challenges to a delegation clause when, as here, the challenge is based on a separate procedural provision.  In *Murray v. Under Armour, Inc.*, 2019 U.S. Dist. LEXIS 231532, at *13 (C.D. Cal. Feb. 11, 2019), for example, the plaintiff argued the unconscionability of a delegation clause based on a one-year limitations period for arbitration and a requirement that she travel to arbitrate her claims.  The court rejected those arguments, finding that they "go to provisions of the arbitration agreement beyond the delegation clause."  *Id.*; *see also Artis v. Lyon Shipyard, Inc.*, 2018 U.S. Dist. LEXIS 73704, at *12 n.7 (E.D. Va. Apr. 26, 2018) ("[C]ontractual terms that could operate to limit the relief available (such as shortening the limitations period) are conceptually unrelated to the analysis of the severable delegation provision.").  Mr. Polhill's argument is no different: whether the dispute resolution

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

provision in the arbitration provision is "onerous" or "unfair," as he alleges, has no bearing on whether it is unconscionable to delegate arbitrability disputes to the arbitrator.

Further, the delegation clause standing alone is not unconscionable. Under black-letter Michigan law, a contract term is unconscionable if, and only if, it is both "procedurally and substantively unreasonable." *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 974 (6th Cir. 2009) (citing *Allen v. Mich. Bell Tel. Co.*, 18 Mich. App. 632, 636 (1969)). To be procedurally unreasonable, a party must show an "absence of meaningful choice" on the part of one of the parties. *Ozormoor*, 354 F. App'x at 974. Substantive unconscionability exists where the challenged term is so one-sided as to "shock the conscience." *Lebenbom v. UBS Fin. Servs.*, 326 Mich. App. 200, 217 (2018). "The party asserting the defense of unconscionability bears the burden of proving it." *Ozormoor*, 354 F. App'x at 974.

Parties routinely delegate threshold arbitrability questions to the arbitrator, and there is nothing substantively unconscionable, exceptional, or onerous about doing so. As the Supreme Court has observed, "that ship has sailed." *Schein*, 139 S. Ct. at 530; *see also LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 467 (9th Cir. 2021) ("Appellants also fail to demonstrate that the delegation clause 'shocks the conscience'…. To the contrary, the Supreme Court requires enforcement of such clauses.").

Nor is the delegation clause procedurally unconscionable. A provision that includes an "opt out" period, like the one provided by the T&Cs, affords a clear choice and is not procedurally unconscionable. *See, e.g.*, *Gavrilovic v. T-Mobile USA, Inc.*, 2022 U.S. Dist. LEXIS 67109, at *13 (E.D. Mich. Mar. 25, 2022) (concluding "the arbitration provision, which included a 30-day opt-out period, is not procedurally unconscionable"); *Zawada v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 178582, at *19 (E.D. Mich. Dec. 27, 2016) (same), *aff'd*, 727 F. App'x 839 (6th Cir. 2018). Here, Mr. Polhill was free to accept or reject the term, as the T&Cs allowed him to opt out of arbitration by notifying Metro in writing within 30 days of initiating service. (Muzio Decl. Ex. A at 2.) Further, Mr. Polhill had the choice whether to initiate service with Metro and agree to its terms—or to take his business elsewhere. The Metro T&Cs

emphasized:  "IF YOU ARE A NEW CUSTOMER AND YOU DO NOT AGREE TO THIS

AGREEMENT, DO NOT INITIATE SERVICE."  (Muzio Decl. Ex. A at 1.)  Mr. Polhill was

free to choose from "several wireless service providers" if he did not want to contract with

Metro.  *Ozormoor*, 354 F. App'x at 974 (finding no procedural unconscionability based on

availability of multiple wireless service providers) (citing Michigan law); *accord Gavrilovic*,

2022 U.S. Dist. LEXIS 67109, at *13 (same).  The delegation clause is neither procedurally nor

substantively unconscionable.

       **3.**      **In any Event, Metro's Arbitration Provision Is Enforceable.**

Because there is a valid and enforceable delegation clause, any dispute about the

enforceability of Mr. Polhill's arbitration agreement with Metro must be decided by the

arbitrator.  Even if the Court considers the issue (it should not), it should follow the long line of

cases holding that T-Mobile's standard arbitration clauses are not unconscionable.  *See*

*Mohammad v. T-Mobile USA, Inc.*, 2018 U.S. Dist. LEXIS 202678, at *17 (E.D. Cal. Nov. 29,

2018) (finding arbitration clause not procedurally or substantively unconscionable); *Meyer v.*

*T-Mobile USA, Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) (finding T-Mobile's arbitration

agreement was not procedurally unconscionable); *Alvarez v. T-Mobile USA, Inc.*, 2011 U.S. Dist.

LEXIS 146757, at *7 (E.D. Cal. Dec. 21, 2011) (same); *Owings v. T-Mobile USA, Inc.*, 978 F.

Supp. 2d 1215, 1224 (M.D. Fla. 2013) (same).  The Supreme Court has also clearly rejected

arguments indistinguishable from Mr. Polhill's that an arbitration clause is unenforceable based

on the waiver of class action rights.  *See, e.g.*, *Am. Express*, 570 U.S. at 232; *Concepcion*, 563

U.S. at 344 (affirming enforceability of class action waivers); *see also Carter v. Rent-A-Ctr.,*

*Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (interpreting "*Concepcion* as foreclosing any

argument that a class action waiver, by itself, is unconscionable under state law or that an

arbitration agreement is unconscionable solely because it contains a class action waiver").

Further, there is nothing unconscionable about the informal resolution procedure.  *See, e.g.*,

*Denson v. Keplr Vision, LLC*, 2021 U.S. Dist. LEXIS 147181, at *7-8 (S.D. Cal. Aug. 5, 2021)

("The informal resolution requirement is not unconscionable. …  [T]he agreement simply

1   requires the parties to pursue an informal resolution prior to arbitration.  It does not set forth any

2   required steps that might provide Defendants with an unfair advantage[.]").  The arbitration

3   clause is enforceable.

4       **C.       The Court Should Require Plaintiffs Bennett and Garcia to Arbitrate or**

5            **Disclose Identifying Information.**

6       Ms. Bennett and Mr. Garcia's allegations against T-Mobile are identical to Mr. Polhill's

7   except with respect to their states of residence and specific damages, and both Plaintiffs allege

8   the existence of a written agreement to arbitrate with T-Mobile.  (Compl. ¶¶ 13-15, 62-73.)  Ms.

9   Bennett and Mr. Garcia also challenge the arbitration provision as unenforceable on the same

10  grounds as Mr. Polhill.  (*Id.* ¶ 83(i) (challenging the T&Cs as "illegal, unconscionable, or

11  otherwise unenforceable"); *see also id.* ¶¶ 86-97 (seeking declaratory judgment regarding

12  invalidity of arbitration provision).)  Given that, the Court should compel Ms. Bennett and Mr.

13  Garcia to arbitrate their claims for the same reasons it should compel Mr. Polhill to arbitrate—

14  even though T-Mobile at this point lacks sufficient identifying information to provide the same

15  account-specific details for these Plaintiffs (such as dates of service or acquisition of new devices

16  and whether they received service through Metro or a different T-Mobile brand).

17      If, however, Ms. Bennett and Mr. Garcia now challenge their agreement to arbitrate and

18  allegations made in the Complaint, then the Court should compel these two Plaintiffs to provide

19  identifying information to T-Mobile.  T-Mobile has not been able to locate Ms. Bennett or Mr.

20  Garcia's account information, sufficient to allow it to identify the specific arbitration agreements

21  they entered into.  (*See* Muzio Decl. ¶ 34.)  T-Mobile's counsel has asked Plaintiffs' counsel to

22  provide either Ms. Bennett and Mr. Garcia's billing account number ("BAN") or their phone

23  number, which would allow T-Mobile to identify their accounts and the arbitration agreements

24  associated with those accounts, but Plaintiffs have refused to provide it.  (*See* Moon Decl. ¶ 3.)

25      Section 4 of the FAA provides a clear right to limited discovery in these circumstances,

26  where "the making of the arbitration agreement … be in issue."  *I.C. v. Zynga Inc.*, 2021 U.S.

27  Dist. LEXIS 2227, at *4 (N.D. Cal. Jan. 6, 2021) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d

1   716, 726 (9th Cir. 1999); 9 U.S.C. § 4).  Applying this provision, courts regularly order plaintiffs

2   to provide information associated with their accounts so defendants can identify the plaintiff and

3   locate any agreements to arbitrate.  *See, e.g.*, *Zynga*, 2021 U.S. Dist. LEXIS 2227, at *5-6

4   (noting defendant who filed motion to compel arbitration "entitled to some discovery on this

5   threshold topic" and ordering plaintiffs to provide email addresses, user IDs, or Facebook IDs

6   associated with online account).  The Court should honor "the unmistakably clear congressional

7   purpose that the arbitration procedure … be speedy and not subject to delay and obstruction in

8   the courts" by requiring Ms. Bennett and Mr. Garcia to disclose their BAN and phone number to

9   T-Mobile.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

10          **D.      This Case Should Be Stayed.**

11          The FAA provides that, once satisfied that the suit should be moved into arbitration, a

12   court "shall on application of one of the parties stay the trial of the action."  9 U.S.C. § 3.

13   Because Plaintiffs assert claims within the scope of an enforceable arbitration agreement, the

14   Court should stay their claims pending arbitration.  In the alternative, should Ms. Bennett and

15   Mr. Garcia challenge the existence of an agreement to arbitrate, T-Mobile respectfully requests

16   the Court stay all proceedings pending this motion and the accompanying request under the FAA

17   for identifying information to file a supplemental motion.  *See Tali v. Meyers*, 2020 U.S. Dist.

18   LEXIS 16578, at *3 (D. Nev. Jan. 31, 2020) ("Courts frequently stay discovery pending

19   resolution of a motion to compel arbitration.") (citing *Mahamedi IP Law, LLP v. Paradice & Li,*

20   *LLP*, 2017 U.S. Dist. LEXIS 117212, at *2 (N.D. Cal. Feb. 14, 2017) (collecting cases));

21   *Marshall v. Rogers*, 2018 U.S. Dist. LEXIS 180190, at *6 (D. Nev. Oct. 19, 2018) (granting stay

22   to avoid prejudice to defendant while motion to compel is pending).

23                          **IV.      CONCLUSION**

24          The Court should grant T-Mobile's motion and compel Plaintiffs to arbitrate his claims

25   against T-Mobile and otherwise stay this action.

26

27

MOTION TO COMPEL ARBITRATION
(2:22-cv-01805-LK) - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    DATED this 16th day of February, 2023.

2

3                                             Davis Wright Tremaine LLP
                                              Attorneys for Defendant T-Mobile USA, Inc.
4                                             d/b/a Metro by T-Mobile

5                                             I certify that this memorandum contains 7,400
                                              words, in compliance with the Local Civil
6                                             Rules.

7

8                                             By: */s/ Jennifer K. Chung*
                                                  Stephen M. Rummage, WSBA #11168
9                                                 Rachel Herd, WSBA #50339
                                                  Jennifer K. Chung, WSBA #51583
10                                                920 Fifth Avenue, Suite 3300
                                                  Seattle, WA  98104
11                                                Telephone: 206-622-3150
                                                  Fax: 206-757-7700
12                                                steverummage@dwt.com
                                                  rachelherd@dwt.com
13                                                jenniferchung@dwt.com

14                                                James H. Moon, *pro hac vice*
                                                  865 S. Figueroa St., Suite 2400
15                                                Los Angeles, CA 90017
                                                  Telephone: 213-633-6800
16                                                Fax: 213-633-6899
                                                  jamesmoon@dwt.com

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax