UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TARA BENNETT and EDWARD POLHILL, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>T-MOBILE USA, INC.,<br><br>      Defendant. | CASE NO. 2:22-cv-01805-LK<br><br>ORDER REQUESTING SUPPLEMENTAL BRIEFING |

  This matter comes before the Court on Defendant T-Mobile USA, Inc.'s Motion to Compel Arbitration and Stay Case. Dkt. No. 14. Plaintiffs Tara Bennett and Edward Polhill oppose the motion. Dkt. Nos. 20, 28. For the reasons stated herein, the Court requests supplemental briefing as set forth below.

  Plaintiffs Tara Bennett and Edward Polhill initiated this putative class action seeking relief "on behalf of all T-Mobile customers [who] have been the victim of SIM swap fraud." Dkt. No. 1

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 1

at 1, 5.[1] On behalf of themselves and the putative class, Plaintiffs assert six causes of action under federal statute and state common law and request monetary, injunctive, and declaratory relief, including a judgment declaring that T-Mobile's arbitration clause is unenforceable. Dkt. No. 1 at 26–44.

T-Mobile maintains that Plaintiffs' claims are subject to mandatory arbitration. Dkt. No. 14 at 8; *see* Dkt. No. 26 at 3. The Court previously deferred ruling on the portion of T-Mobile's motion seeking to compel arbitration and stay the case and granted the portion of its motion seeking to compel discovery, ordering Plaintiffs to provide T-Mobile with the billing account number(s) and telephone number(s) for Bennett. Dkt. No. 24 at 4; *see* Dkt. Nos. 26–28 (the parties' subsequent briefing regarding Bennett's purported agreement with T-Mobile). To assist in the adjudication of T-Mobile's motion, the Court now requests supplemental briefing regarding the various iterations of the Terms and Conditions ("T&Cs") to which Plaintiffs purportedly agreed.

T-Mobile avers that in December 2013, Polhill activated a Metro[2] wireless services account and made at least 125 payments between then and December 2022. Dkt. No. 15 at 2, 5. Although Metro updated its T&Cs eight times during that period, T-Mobile represents that "the relevant provisions have not changed in any way material to this dispute." Dkt. No. 14 at 10 n.3. T-Mobile cites to the October 8, 2018 T&Cs "[f]or convenience" in its motion. *Id.*; *see* Dkt. No. 15-6 at 2–8.

In its supplemental briefing regarding Bennett, T-Mobile cites to the March 1, 2021 version of the T-Mobile T&Cs "[f]or convenience," and because they were "the latest version before this action was initiated." Dkt. No. 26 at 4 n.1; *see* Dkt. No. 27-5 at 2–34. T-Mobile updated its T&Cs

---

[1] A third named Plaintiff, David Garcia, voluntarily dismissed his claims against T-Mobile. Dkt. No. 25.

[2] T-Mobile provides wireless telecommunication services through several brands, including prepaid wireless phone plans under the "Metro by T-Mobile" moniker following its 2013 merger with MetroPCS Communications, Inc. Dkt. No. 14 at 9 & n.1; Dkt. No. 15 at 2.

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 2

at least three times since Bennett began using her T-Mobile phone line, and as with Metro's T&Cs, T-Mobile represents that "the relevant provisions have not changed in any way material to this dispute." Dkt. No. 26 at 4 n.1.

Based upon the Court's initial review, however, there are notable differences between the 2021 T&Cs and prior versions—including the 2018 Metro T&Cs—with respect to the dispute resolution and arbitration language, the opt-out language (both with respect to the arbitration clause and changes to the T&Cs), the process for changing the T&Cs, and the sections marked with an asterisk denoting survival after termination of the agreement. *Compare* Dkt. No. 15-9 at 2–6, *with* Dkt. No. 15-6 at 2–8. For example, T-Mobile argues that the arbitration clause in the Metro T&Cs "expressly reaches 'all claims for relief and all theories of liability, whether based in contract, tort, statute, [or] regulation,' which covers Mr. Polhill's claims." Dkt. No. 14 at 20. Although the quoted language is in the 2018 Metro T&Cs, *see* Dkt. No. 15-6 at 2, it is nowhere to be found in the T&Cs that T-Mobile contends were in force at the time Polhill experienced the SIM swap and sued, *see generally* Dkt. No. 15-9; *see also* Dkt. No. 1 at 21. By way of another example, T-Mobile argues that "[m]odifications to the *arbitration agreement* (as opposed to the T&Cs as a whole) are governed by [a] provision" allowing the consumer to "reject the change … by notifying us in writing … within 30 days of the date of the change notice." Dkt. No. 21 at 11. This language too is absent from the 2021 Metro T&Cs. *See generally* Dkt. No. 15-9. The Court declines to scour the more than 250 pages of terms and conditions that T-Mobile has attached to its declarations to discern all the potentially material differences among the T&Cs. Instead, it requires T-Mobile to provide the information in a format that facilitates efficient comparison.

Accordingly, within 21 days from the date of this Order, T-Mobile is ordered to provide two charts comparing the material provisions in each of the versions of the (1) Metro T&Cs and (2) T-Mobile T&Cs, including at least those categories listed in the preceding paragraph. T-Mobile

may not include any substantive arguments in its filing. To the extent the chart is created in Excel or Word, T-Mobile should deliver a native file to the Court's orders inbox. Plaintiffs may file a response of no more than 4,200 words within 14 days of T-Mobile's filing, addressing any differences in the T&Cs that are material to the pending motion. And T-Mobile may file an optional reply of no more than 2,100 words within 7 days thereafter.

Dated this 16th day of November, 2023.

Lauren King
United States District Judge

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 4