The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TARA BENNETT, DAVID GARCIA, and EDWARD POLHILL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | No. 2:22-cv-01805-LK<br><br>**DEFENDANT'S SUPPLEMENTAL REPLY BRIEF IN RESPONSE TO THE COURT'S NOVEMBER 16, 2023, ORDER (ECF NO. 29)** |

## I. INTRODUCTION

Plaintiffs' supplemental brief does not identify any difference between the T&Cs that affects T-Mobile's pending Motion to Compel Arbitration. Although some of the language may have changed over the years, the parties' obligations have always remained the same: the parties agree to arbitrate all disputes relating to services offered by T-Mobile, and to delegate issues of arbitrability to an Arbitrator. There are no differences in language in any version of either the Metro T&Cs or the T-Mobile T&Cs that change the conclusion that the arbitration agreements and delegation clauses are enforceable, the agreements are not unconscionable, and Plaintiffs' claims are within the scope of the agreements.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II. ARGUMENT

### A. Plaintiffs' Responses Are Meritless.

Plaintiffs do not (and cannot) identify a single difference between any version of the Metro or T-Mobile T&Cs that affects the resolution of T-Mobile's pending Motion. (ECF No. 33 at 2-5.) They instead make four other arguments, all of which fail.

*First*, Plaintiffs claim that *Bayani v. T-Mobile USA, Inc.*, 2023 U.S. Dist. LEXIS 189184 (W.D. Wash. Oct. 20, 2023), supports their new argument that their claims are outside of the scope of the arbitration agreements. Not so. The *Bayani* case, which was filed by a plaintiff who had "*opted out* of T-Mobile's arbitration agreement," did not involve a motion to compel arbitration, and the *Bayani* court did not interpret the scope of T-Mobile's arbitration agreements. *Id.* at *3 (emphasis added). Rather, *Bayani* addressed whether the plaintiff had incorporated the Metro T&Cs by reference into the complaint for purposes of a Rule 12(b)(6) motion to dismiss. *Id.* at *5-7. Accordingly, nothing in *Bayani* supports plaintiffs' arguments.

*Second*, Plaintiffs claim the definition of "You" in the T-Mobile T&Cs is "defined narrowly" and does not include authorized users like Ms. Bennett. (ECF No. 33 at 3.) But "You" is not defined in the T-Mobile T&Cs (*see* T-Mobile Chart, Rows 3 & 5), and there is no reason the T&Cs would not encompass authorized users of T-Mobile accounts. And importantly, Ms. Bennett is bound to arbitrate her claims even as a nonsignatory to the contractual relationship between T-Mobile and Mr. Szteinhendler based on estoppel and her status as a third-party beneficiary. (ECF No. 26 at 3-5 (collecting cases).)

*Third*, Plaintiffs claim "the Metro T&Cs make clear that a customer's receipt of the Terms of Service is not guaranteed." (ECF No. 33 at 4.) That is not what the T&Cs say. They read: "you may receive a Start of Service form and this agreement." (Metro Chart, Row 3.) This language is consistent with Mr. Muzio's declaration that during the relevant times, it was "Metro's standard practice and procedure to provide information about Metro's Terms and Conditions" and the "Metro Information Sheet" to customers activating Metro service. (ECF No. 15 ¶¶ 22-23.) There is also no contrary evidence suggesting Mr. Polhill did not receive the



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

information. Plaintiffs claim Mr. Polhill declared "that he did not receive the Metro T&Cs." (ECF No. 33 at 4.) In fact, in the sworn declaration submitted to this Court, Mr. Polhill stated, "I do not recall receiving a copy of any 'Terms and Conditions' for MetroPCS." (ECF No. 20-1 ¶ 4.) Mr. Polhill's lack of recall does not refute T-Mobile's affirmative evidence of assent. (ECF No. 21 at 3-4 (citing cases).)

*Fourth*, Plaintiffs claim T-Mobile waived its right to arbitrate by litigating an MDL in Missouri. (ECF No. 33 at 5.) As previously briefed, T-Mobile did not waive its right to arbitrate Mr. Polhill and Ms. Bennett's claims because it did not compel arbitration against different plaintiffs in a different case involving different claims in a different court. (ECF No. 21 at 11 (collecting cases).) Plaintiffs do not cite a single case supporting such a novel proposition.

**B. The Court Should Compel Mr. Polhill to Arbitrate.**

T-Mobile submitted the nine versions of the Metro T&Cs that cover the nine-year period from Mr. Polhill's activation of his service in December 2013 through the filing of his complaint in December 2022, as T-Mobile's evidence shows Mr. Polhill's repeated manifestations of assent span this period. (ECF No. 15 ¶¶ 11-19; *see* ECF No. 14 at 9-12.) While the version of the Metro T&Cs in place when the lawsuit was filed (*i.e.*, the 3/1/21 Metro T&Cs) governs the parties' relationship, Mr. Polhill denies that he agreed to any of the versions of the T&Cs in place between 2013 and 2022. As shown in the Metro chart submitted to the Court, all versions of the Metro T&Cs cover Mr. Polhill's claims, require arbitration of all service-related disputes, and delegate issues of arbitrability. *See, e.g.*, *Moreno v. T-Mobile USA, Inc.*, 2023 U.S. Dist. LEXIS 12911, at *1-8 (W.D. Wash. Jan. 25, 2023) (granting motion to compel based on "various arbitration agreements" spanning 2017-2021).

***Assent***. Prior to March 2021, all versions of the Metro T&Cs stated that by "activating or continuing service" and "paying for the service," Mr. Polhill agreed to be bound by the Metro T&Cs. (Metro Chart, Row 5.) The March 1, 2021, Metro T&Cs contain the same



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

agreement: "You accept these T&Cs by… activating, using or paying for the Service … ."[1] (*Id*. at Row 5 (3/1/21).) It is unrefuted that Mr. Polhill activated his line of service in December 2013, received monthly text messages informing him that "Metro by T-Mobile Terms & Conditions including arbitration apply" with a link to the T&Cs, and paid for his Metro service, including at least 125 payments between December 2013 and December 2022, when this action was initiated. (ECF No. 15 ¶¶ 8-9, 29, 31.)

***Scope***. Mr. Polhill's claims arise from allegations "related to or concerning" the service he was provided under the Metro T&Cs; specifically, the allegation that a Metro employee swapped his mobile phone service to a bad actor's device. (ECF No. 1 ¶ 72.) Although there have been minor changes, under every version of the Metro T&Cs Mr. Polhill's claims are within the scope of the arbitration agreement:

| Version | Scope of Arbitration Agreement |
|---|---|
| May 1, 2013 | "**Any Dispute** between you and us **shall be resolved**, upon the election of either you or us, **by binding arbitration**. … 'Dispute'… shall include any dispute, claim, or controversy arising from or relating to this Agreement or Services…." |
| Versions between April 1, 2015 and April 29, 2020 | "**[A]ny and all claims or Disputes** between you and us, in any way related to or concerning the Agreement… [or] our Services… **will be resolved by binding arbitration**." |
| March 1, 2021 | "**[A]ny and all claims or Disputes** in any way related to or concerning the Agreement… [or] our Services… **will be resolved by binding arbitration or in small claims court**." |

(Metro Chart, Row 7 (emphasis added).)

***Delegation***. Each version of the Metro T&Cs incorporates by reference the AAA's consumer rules (Metro Chart, Row 11), which "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The May 1, 2013, Metro T&Cs also provided the parties the option to arbitrate

[1] In March 1, 2021, T-Mobile revised the language and format of the Metro T&Cs to conform with the language and format of the T-Mobile T&Cs.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

under JAMS rules, but this does not change the analysis. *See Moreno*, 2023 U.S. Dist. LEXIS 12911, at *11-13 & n.1 (parties delegated arbitrability where T&Cs incorporated JAMS and AAA rules by reference). In addition, the arbitration agreement in all versions of the Metro T&Cs is broad and encompasses all claims "arising from or relating to this Agreement" (May 1, 2013) or "in any way related to or concerning the Agreement" (all other versions). (Metro Chart, Row 7.) This broad language and incorporation of AAA rules delegates issues of arbitrability to the Arbitrator. *See, e.g.*, *Naveja v. Primerica, Inc.*, 2021 U.S. Dist. LEXIS 93191, at *16-17 (E.D. Cal. May 14, 2021); *see also* ECF No. 14 at 15.

***Enforceability***. Delegation clauses are not substantively unconscionable. (ECF No. 14 at 17.) The arbitration agreement in all of the Metro T&Cs "include a 30-day opt-out period" (Metro Chart, Row 9), which precludes procedural unconscionability under Michigan law (ECF No. 14 at 17-18).

***Pre-Arbitration Procedure***. Since April 1, 2015, the Metro T&Cs have included a pre-arbitration dispute resolution procedure under which the parties have 60 days to resolve claims before initiating arbitration. (Metro Chart, Row 9.) Plaintiffs previously argued this type of pre-arbitration procedure renders the Metro arbitration agreement unconscionable based on *Bielski v. Coinbase, Inc.*, 2022 U.S. Dist. LEXIS 65689 (N.D. Cal. Apr. 8, 2022). The Ninth Circuit recently rejected that very argument and reversed the district court's order. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1015 (9th Cir. 2023). In its opinion, the Ninth Circuit held that Coinbase's mandatory pre-arbitration dispute resolution procedure did not make the arbitration agreement or delegation clause unconscionable, because it was not "overly harsh or unfairly one-sided." *Id.* at 1015. As explained in prior briefing, T-Mobile's pre-arbitration procedure is substantially less onerous than the Coinbase procedure in *Bielski*, which (unlike T-Mobile's) involved a "tripartite" procedure with "multiple, antecedent hoops." (ECF No. 21 at 10 (comparing procedures based on district court opinion).)[2]

[2] In addition, like Coinbase's agreement, any time restriction to bring claims is mutual and not unfairly one-sided against the "non-drafting parties." *Bielski*, 87 F.4th at 1015; *see* Metro



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**C. The Court Should Compel Ms. Bennett to Arbitrate.**

No differences in the T-Mobile T&Cs affect Ms. Bennett's obligation to arbitrate.

***Assent***. All versions of the T-Mobile T&Cs state: "You accept these T&Cs by … activating, using or paying for the Service … ." (T-Mobile Chart, Row 5.) It is undisputed that Ms. Bennett's line of service was activated in May 2019, Ms. Bennett used this line, and the line was paid for through the filing of this action. (ECF No. 27 ¶¶ 8, 24-25.) These facts bind the account holder and Ms. Bennett, via estoppel and beneficiary theories, to the T-Mobile T&Cs. In particular, she is bound by the March 2021 T-Mobile T&Cs in effect when she initiated this action and suffered the SIM swap. (*See* ECF No. 26 at 2-5.)

***Scope***. The scope of the arbitration agreement in the T-Mobile T&Cs is broad and has not changed: "any and all claims or disputes in any way related to or concerning the agreement… [or] our services… will be resolved by binding arbitration or in small claims court." (T-Mobile Chart, Row 7.) Because Ms. Bennett alleges claims "related to or concerning" the services she was provided by T-Mobile, her claims are subject to arbitration. (ECF No. 1 ¶ 64.)

***Delegation***. All versions of the T-Mobile T&Cs incorporate by reference the AAA's consumer rules, establishing that arbitrability is delegated to the Arbitrator. (T-Mobile Chart, Row 11 ("The arbitration of all disputes will be administered by [AAA] under its Consumer Arbitration Rules in effect at the time the arbitration is commenced.").) In addition, the broad scope of the T-Mobile arbitration agreement and incorporation of arbitral rules effectively delegate arbitrability to the Arbitrator. *See Wu v. Uber Techs., Inc.*, 186 N.Y.S.3d 500, 517 (N.Y. Sup. Ct. 2022), *aff'd*, 197 N.Y.S.3d 1 (N.Y. App. Div. 2023).

***Enforceability***. Delegation clauses are not substantively unconscionable. (*See* ECF No. 26 at 17.) The arbitration agreement in all of the T-Mobile T&Cs contain an opt-out

---

Chart, Row 17 (all versions except 3/1/21); ECF No. 15-9 at 6 (3/1/21 version provides mutual limitation period in "Limitation of Liability" section).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

provision (T-Mobile Chart, Row 9), which precludes procedural unconscionability, *see Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 730-31 (E.D.N.Y. 2017).

***Pre-Arbitration Procedure***. T-Mobile's pre-arbitration dispute resolution procedure (T-Mobile Chart, Row 11) does not render the T-Mobile arbitration agreement unconscionable, *see Bielski*, 87 F.4th at 1015. Any time restriction to bring claims under the T-Mobile T&Cs is mutual. (*See, e.g.*, ECF No. 27-5 at 32.)

## III. CONCLUSION

For all the reasons stated here and in the prior briefing, the Court should grant T-Mobile's Motion to Compel Arbitration of Mr. Polhill and Ms. Bennett's claims.

DATED this 28th day of December, 2023.

Davis Wright Tremaine LLP
Attorneys for Defendant T-Mobile USA, Inc.

I certify that this memorandum contains 1,992 words, in compliance with the Court's November 16, 2023, Order.

By: /s/ *Jennifer K. Chung*

Stephen M. Rummage, WSBA #11168
Rachel Herd, WSBA #50339
Jennifer K. Chung, WSBA #51583
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-622-3150
Fax: 206-757-7700
steverummage@dwt.com
rachelherd@dwt.com
jenniferchung@dwt.com

James H. Moon, *pro hac vice*
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017
Telephone: 213-633-6800
Fax: 213-633-6899
jamesmoon@dwt.com